RANLO SUPPLY COMPANY v.
HENRY L. CLARK AND WIFE, NANCY CLARK.

(Filed 5 March, 1958.)

1. **Laborers' and Materialmen's Liens § 2—**

Where plaintiff's evidence establishes that the contractor agreed with the owner or his agent to construct a house for a fixed sum, and that plaintiff furnished materials for the construction of the house in dealings solely with the contractor, plaintiff may not assert a lien under G.S. 44-1, since such lien must be based upon a contract between the parties establishing the relationship of debtor and creditor.

2. **Same: Quaisi-Contracts § 1—**

Where there is an express contract between the owner and contractor for the construction of a house at a fixed price as a turnkey job, there can be no implied contract between the owner and a person furnishing material for the construction of the house under an agreement solely with the contractor, since there can be no implied contract where there is an express contract between the parties in reference to the subject matter.

3. **Laborers' and Materialmen's Liens § 3—**

Where a party seeks to enforce a lien under G.S. 44-1, he is estopped from asserting any lien as a sub-contractor under G.S. 44-6, 44-8 and 44-9.

4. **Laborers' and Materialmen's Liens § 5—**

Where a materialman makes no demand on the owner for payment prior to payment by the owner to the contractor of the full amount due the contractor, such materialman cannot assert a lien under G.S. 44-6.

5. **Laborers' and Materialmen's Liens § 2—**

Where a house is constructed under a contract for a turnkey job at fixed price, the fact that a check from the loan company is made payable to the owner, contractor and material furnisher, and endorsed by the owner and contractor to the material furnisher, is insufficient alone to establish a contract between the owner and the material furnisher.

APPEAL by plaintiff from *Huskins, J.,* October Term 1957 of GASTON.

This is a civil action to establish a materialmen's lien on a house and the land upon which it was constructed.

The plaintiff alleges in its complaint that on or about the 20th day of December 1954 the defendants entered into a contract with the plaintiff whereby the plaintiff was to furnish certain building materials to be used in the construction of a building upon a 4-acre tract of land belonging to the defendants. That plaintiff furnished such materials for which the defendants agreed to pay the sum of $2,186.54, as per itemized statement attached as an exhibit to the complaint. That such materials were furnished to the defendants between 20 December 1954 and 15 February 1955. It is further alleged that there is now due the plaintiff by the defendants the sum of $1,186.54, with interest from 15 February 1955 until paid.

The defendants denied the material allegations of the complaint and for a further answer and defense allege that Floyd Clark, a son of the defendants, contracted with one John F. Smith, a contractor, to build a dwelling house on the land described in the complaint. The terms of the contract were that the contractor was to furnish all labor and materials used in the construction of said house, and for which Floyd Clark agreed to pay the sum of $5,500. Payments were to be made when the house reached certain stages of completion. That prior to the completion of said contract, Smith abandoned the contract and the house remains uncompleted; that to complete the house would require approximately $1,500.

The plaintiff's evidence tends to establish these facts: John F. Smith made a contract with Floyd Clark to construct a house on the land described in the complaint, which land was owned by the defendants as tenants by the entirety. Smith agreed to obtain the materials, furnish the labor, and complete the house for the sum of $5,500. The original contract called for asbestos siding which was changed to brick veneer by Floyd Clark after the house was under construction. The materials in question were delivered and used by Smith in the construction of the house. Smith never talked with the defendants about the construction of the house; his contract was with Floyd Clark. Neither did these defendants nor Floyd Clark order any materials from the plaintiff, nor did they have any agreement with the plaintiff with respect thereto. Neither did these defendants nor Floyd Clark designate from whom the contractor should purchase the materials to be used in the construction of the house, and the materials were ordered either by Mr. Smith, the contractor, or by one of his employees. According to the testimony of Floyd Clark, who was offered as a witness by plaintiff, the house was not finished by the contractor. It lacked the

mantel, screens were not installed, the basement was not finished, the heating plant was not put in, and numerous other small things left uncompleted.

The defendants did execute a deed of trust on the 4-acre tract of land on which they live, and on which the Floyd Clark house was constructed, to secure a loan from the Home Building and Loan Association of Kings Mountain, North Carolina, to finance the construction of the Floyd Clark house. It was stipulated that notice of the lien was filed by the plaintiff in the office of the Clerk of the Superior Court of Gaston County on 12 August 1955, together with a list of the materials, and duly recorded in Lien Book 4, page 270.

At the close of plaintiff's evidence the defendants moved for judgment as of nonsuit and the motion was sustained. Plaintiff appeals, assigning error.

*Berlin H. Carpenter, Jr., and Whitener & Mitchem for plaintiff appellant.*

*Carpenter & Webb, and John G. Golding for defendants appellee.*

DENNY, J. The plaintiff contends that under the facts and circumstances revealed on this record, it has an implied contract with the defendants to pay for the materials it furnished to Smith to build the Floyd Clark house on the premises of the defendants.

It would seem that the judgment entered below must be sustained for several reasons.

The evidence, in our opinion, is insufficient to support the plaintiff's contention that it has an implied contract with the defendants to pay for the materials furnished by it for the construction of the house in question. It is clear from the evidence that the plaintiff never entered into any agreement with these defendants to pay for the materials furnished or discussed the subject with them until after the materials were purchased by Smith and used by him in the construction of the house.

In the case of *Air Conditioning Co. v. Douglass*, 241 N.C. 170, 84 S.E. 2d 828, this Court, speaking through Parker, J., said: "A laborers' and materialmen's lien arises out of the relationship of debtor and creditor, and it is for the debt that the lien is created by statute. Without a contract the lien does not exist. *Brown v. Ward*, 221 N.C. 344, 20 S.E. 2d 324. In that case it is said: 'Mere knowledge that work is being done or material furnished on one's property does not enable the person furnishing the labor or material to obtain a lien.' " *Boykin v. Logan*, 203 N.C. 196, 165 S.E. 680; *Honeycutt v. Kenilworth Development*

*Co.*, 199 N.C. 373, 154 S.E. 628; *Foundry Co. v. Aluminum Co.*, 172 N.C. 704, 90 S.E. 923; *Weathers v. Cox*, 159 N.C. 575, 76 S.E. 7; *Boone v. Chatfield*, 118 N.C. 916, 24 S.E. 745; *Wilkie v. Bray*, 71 N.C. 205.

The evidence unequivocally establishes the fact that there was a contract between John F. Smith and Floyd Clark whereby Smith was to furnish the labor and materials necessary to construct the house for a fixed sum. The plaintiff's evidence clearly establishes this fact. Moreover, whatever contract was made with the plaintiff with respect to the purchase of these materials was made with Smith and not with the owners of the property.

This Court, in the case of *Manufacturing Co. v. Andrews*, 165 N.C. 285, 81 S.E. 418, Ann. Cas. 1916A, 763, said: "* * * it is a well recognized principle that there can be no implied contract where there is an express contract between the parties in reference to the same subject-matter." *Lawrence v. Hester*, 93 N.C. 79.

Here the plaintiff alleges a contractual relationship with the defendants in both the lien notice and in its complaint, and seeks to enforce its alleged lien pursuant to the provisions of G.S. 44-1. Such being the case, the plaintiff would be estopped from asserting any lien as a sub-contractor pursuant to the provisions of G.S. 44-6, G.S. 44-8, and G.S. 44-9. *Economy Pumps, Inc. v. Woolworth Co.*, 220 N.C. 499, 17 S.E. 2d 639; *Lumber Co. v. Perry*, 212 N.C. 713, 194 S.E. 475. Moreover, there is no evidence in this record to the effect that plaintiff made any demand on these defendants for payment of the balance now claimed to be due and unpaid, until after the original contract price for the house had been paid to the contractor out of funds provided by these defendants through a loan secured by a deed of trust on the premises involved. *Building Supplies Co. v. Hospital Co.*, 176 N.C. 87, 97 S.E. 146; *Foundry Co. v. Aluminum Co., supra; Lumber Co. v. Hotel*, 109 N.C. 658, 14 S.E. 35.

Furthermore, the fact that the Building and Loan Association, which made the loan to finance the construction of the house, issued one of its vouchers payable to Henry Clark, J. F. Smith, and the plaintiff, in the sum of $1,000, on 7 January 1955, which voucher was endorsed by Henry Clark and J. F. Smith and delivered to the plaintiff, is not sufficient to establish a contract between these defendants and the plaintiff where the building was being constructed by one of the payees under a contract for a turnkey job at a fixed price.

In our opinion, the ruling of the court below should be upheld, and it is so ordered.

Affirmed.